Reed Smith LLP
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
Tel +1 215 851 8100
Fax +1 215 851 1420
reedsmith.com

**Amanda D. Haverstick**
Direct Phone: +1 215 241 7989
Email: ahaverstick@reedsmith.com

October 20, 2014

**VIA ECF; COURTESY COPY TO FOLLOW**

Hon. P. Kevin Castel
U.S. District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *Robert Mullings, et al. v. DIRECTV, Inc., et al.*, Case No. 14-cv-5743 (PKC)

Dear Judge Castel:

We write pursuant to the Court's October 1, 2014 Order, on behalf of Defendants DIRECTV, Inc. and DIRECTV, LLC (together, "DIRECTV") and MasTec North America, Inc. ("MasTec"), to describe the deficiencies in the second amended complaint, filed on October 10, 2014. As discussed with Your Honor during the October 1, 2014 conference, we do not in this letter attempt to set forth the full legal arguments with supporting case law, as in a formal motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), but rather to convey the factual bases for such a motion to plaintiffs, such that they might amend their pleading to cure the identified deficiencies and avoid motion practice.

**Background & Overview**

Defendant DIRECTV is a provider of satellite television services to customers throughout the U.S. To provide these services, DIRECTV directly employs various individual dish installation and repair technicians ("Technicians"), but it also contracts with separately incorporated business entities in different regions of the country – known as home service providers ("HSPs" or "Providers") – to supply additional Technicians to perform services for DIRECTV customers in those regions.

Defendant MasTec is one such Provider. Pursuant to its contract with DIRECTV, the majority of Technicians whom MasTec provides are its own, W-2 employees. In certain locations, however, MasTec also maintains service provider agreements with smaller, separately owned subcontractors ("SubKs") – pursuant to which each SubK, not MasTec, engages and pays (as SubK employees or independent contractors) various additional Technicians who perform services for DIRECTV customers.

Halsted Communications, Ltd. ("Halsted") (referenced throughout the SAC), similarly provided Technicians to perform services for DIRECTV customers, before Halsted's acquisition by MasTec in 2011. These Technicians may have been Halsted employees, or independent contractors of Halsted or various other third-party SubKs with which Halsted maintained service provider agreements.

Before the Court currently is a second amended complaint ("SAC" or "Complaint") in which four former Technicians assert claims against DIRECTV and MasTec under the Fair Labor Standards Act ("FLSA") and parallel NY wage laws ("NY Law"). *See generally* SAC. Plaintiffs seek to hold Defendants liable as plaintiffs' "employers" or "joint employers" for failure to pay plaintiffs at the minimum wage rate generally, and at an overtime premium rate for hours worked over 40 per week, as well as for various other related NY Law claims. *See id.* Based on the pleading deficiencies detailed below, Defendants request that plaintiffs amend the SAC to provide the factual enhancement necessary to state claims for relief that are plausible on their face and afford Defendants "fair notice" of the "grounds upon which [those claims] rest[]."[1] Should plaintiffs not so amend, and in the event the Court grants Defendants' future motion to dismiss due in whole or part to the deficiencies outlined herein, Defendants further request that the Court deny plaintiffs leave to further amend.

## A.     Plaintiff Daniel Majeski Can State No Legally Cognizable Claim At All.

In addition to suffering from the deficits detailed in Section B as to all four plaintiffs' claims, the claims of Plaintiff Majeski are further flawed – fatally and incurably so – based on his prior sworn submissions in the decertified collective action that preceded this case, *Lang, et al. v. DirecTV, Inc.*, No. 10-1085 (E.D. La.) ("*Lang*") (referenced at SAC ¶ 18). *See* Majeski's sworn questionnaire response in *Lang* (hereinafter, "SQR"), at C.D. Cal. Dkt. No. 44.[2] Those prior statements by Majeski vitiate the plausibility of any claim by him against MasTec or DIRECTV here.

First, Majeski's *Lang* SQR attests that he was never engaged by any "home service provider" (*e.g.*, MasTec), or by any "subcontractor," to "perform any work orders for DIRECTV customers." *See id.* Nos. 10 & 11. Simply put, Majeski has admitted facts under oath that preclude his current allegations that he was engaged or employed by MasTec – or by any SubK with which MasTec or DIRECTV ever contracted – to supply Technicians to work at any DIRECTV customers. *See id.* Second, Majeski's SQR attests that he never incurred *any* "chargebacks." *Id.* No. 13. Chargebacks are the alleged pay practice that plaintiffs repeatedly blame for causing them "routinely [to be] subjected to working at an effective wage rate of less than the applicable minimum wage." SAC ¶¶ 22, 26, 30, 34, 51; *see also id.* ¶¶ 46, 47, 56, 63. Accordingly, when combined, the many Majeski admissions bar him, as a matter of law, from stating: (i) a claim for unpaid wages against MasTec as his "employer" or "joint employer" with any SubK; (ii) a claim for unpaid wages against DIRECTV as his "joint employer" with MasTec or any of MasTec's or other HSPs' SubKs; or (iii) a claim for unpaid minimum wages against *any* entity for work Majeski may have performed (if any) for DIRECTV customers. Indeed, the sole "work"/ "employment" that Majeski references in his lengthy SQR is work as an owner and grass cutter for a

---

[1] *Delince v. City of New York*, 2011 WL 666347 (S.D.N.Y. Feb. 7, 2011) (Castel, J.) (quoting, *inter alia*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (other quotation and citation omitted)).

[2] The Court should take judicial notice under Federal Rule of Evidence 201 of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *United States Securities and Exchange Comm'n v. Czarnik*, 2010 WL 4860678, at *3 (S.D.N.Y. Nov. 29, 2010) (Castel, J.) (citation omitted). A copy of the lengthy SQRs of all *Lang* opt-ins already are in plaintiffs' counsel's possession and thus are not re-supplied here. A courtesy copy of the three *Mullings* plaintiffs' SQRs, *see* SAC ¶ 18 and n.2, will be provided to the Court on request, and will be filed with any formal dismissal or other related motion.

property maintenance company between 2005 and 2012. *See* SQR No. 13. The only plausible conclusion is that Majeski did *not* ever perform services for DIRECTV customers, under the direction of any entity. Majeski simply has no claims at all.[3] Plaintiffs should withdraw all of his claims against all Defendants with prejudice.

**B.      No Plaintiff Asserts Sufficient Facts to State A Claim Against MasTec or DIRECTV.**

Each of the plaintiffs attempt to provide factual support for the minimum wage and overtime claims set forth in the SAC by alleging – each practically verbatim – that: (1) he was "jointly employed" by DIRECTV and MasTec; (2) he "*routinely* worked more than 40 hours per week as a technician for DIRECTV, MasTec, and Halsted"; (3) "*many*" of those "routinely worked" hours were "unpaid"; and (4) "*Defendants'* employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate [plaintiffs] for all hours worked, and failing to reimburse [their] necessary business expenses) resulted in [plaintiffs] being routinely subjected to working at an effective wage rate of less than the applicable minimum wage." SAC ¶¶ 5, 7, 20-35 (emphasis added). These boilerplate, conclusory allegations are insufficient to state a plausible claim for relief against DIRECTV or MasTec.

*First*, although plaintiffs claim they were "jointly employed" by DIRECTV and MasTec, three of the plaintiffs previously admitted they were *not* W-2 employees of DirecTV *or* MasTec – in their *Lang* SQRs. *See supra* notes 2 & 3. These plaintiffs attested that instead, it was only third-party SubKs that engaged plaintiffs to work for DIRECTV customers, and that under such engagements, plaintiffs were retained and paid as independent contractors by the SubKs. *See id.*[4] These SubKs thus have obvious importance to the validity of plaintiffs' claims. But nowhere in the SAC do plaintiffs even admit the *existence* of these SubKs, much less identify them by name or specify the period during which each SubK engaged each plaintiff. *See generally id.* By these omissions, plaintiffs leave out one entire *half* of the two-part joint-employer equation requisite to showing liability by MasTec or DIRECTV as "joint employers" with the engaging SubKs. Plaintiffs' pleading lapses also make it impossible for Defendants to assess if there are entities suitable for defendant-joinder under Rule 20, and, if so, which ones.

*Second*, plaintiffs do not plead with sufficient specificity the grounds for their unpaid minimum wage or overtime claims. As to the former, plaintiffs simply attack Defendants' "piece rate" pay practice in general, *see, e.g.*, SAC ¶¶ 42, 83, 92 – even though there is nothing *per se* unlawful about such a practice. As to plaintiffs' claims for unpaid overtime, the SAC is no better. Plaintiffs assert merely that "many" of their hours allegedly worked over forty per week were "unpaid." That is not enough. To state a plausible claim for relief for unpaid minimum wages and overtime, plaintiffs should

---

[3] Further supporting this conclusion is the continuous confusion surrounding Majeski's claims against any HSP. In the November 1, 2013 original complaint ("OC") and December 23, 2013 first amended complaint, Majeski asserted claims only against HSP DirectSat USA, LLC ("DirectSat") – not MasTec. Next, in the *proposed* (but not filed) second amended complaint (which plaintiffs' counsel provided Defendants before the October 1, 2014 conference), Majeski asserted claims against DirectSat *and* MasTec. Now, in the filed SAC, Majeski asserts claims only against MasTec. This charade should now come to an end, once and for all.

[4] *See also* July 22, 2014 Order (referenced at SAC p.1, n.1), C.D. Cal. Dkt. No. 63, at 2, Page ID # 8743 ("Plaintiffs contend that … most of them were formally employed by non-party subcontractors").

amend their Complaint to: (1) state the value of the "piece rate" by which they *were* paid; (2) quantify the number of estimated tasks/"pieces" that each plaintiff performed in each week of the limitations period; (3) provide at least an estimate of the number of hours for which plaintiffs claim they were not paid a minimum wage rate (separate and apart from any alleged unpaid overtime hours); and (4) otherwise provide further factual detail as to the length or frequency of their alleged unpaid overtime work, so as to give rise to a reasonable inference that plaintiffs actually worked any overtime at all.

*Third*, nowhere in the SAC do plaintiffs acknowledge (as they must) that it was the SubKs – necessarily and in the first instance – that actually implemented the so-called unlawful pay practices about which plaintiffs complain and on which the viability of their claims depends. Indeed, even for the three entities that the SAC *does* identify – DIRECTV, MasTec, and Halsted – plaintiffs' factual assertions are insufficient. Plaintiffs fail to state *which* of these entities, during which period of time – actually contracted with the SubK that engaged each plaintiff. Plaintiffs simply lump all three entities together as "employers" for whom plaintiffs "worked." *See SAC* ¶¶ 20, 24, 28, 32. Plaintiffs also consistently blend DIRECTV and MasTec together in the SAC, as if these Defendants were one entity, rather than the two completely separate and independently organized corporations (with one based in California, and the other in Florida). Illustrative are the SAC joint employment allegations. Plaintiffs indiscriminately attribute all acts to "Defendants" together, as "DIRECTV and Provider Defendant," or "DIRECTV through Provider Defendant." *See* SAC ¶¶ 52-66. Plaintiffs never once delineate which Defendant they allege actually engaged in which "joint employer" type of act with respect to which, if any, plaintiff. This type of baseless blending of two distinct defendants' conduct in the SAC – such that neither has fair notice of that alleged against it – is precisely the situation that calls for repleading.

*Fourth*, even taking at face value the string of alleged "joint employer" actions attributed to Defendants collectively in the SAC, plaintiffs still have not alleged sufficient facts to state a plausible claim that either Defendant was a "joint employer" with the SubK(s) that directly engaged plaintiffs. Although plaintiffs devote significant attention to allegations about the "rate and method of payment" prong of the "economic reality" totality test for determining joint employment, plaintiffs do not even allege that MasTec or DIRECTV: (1) had the power to, or actually did, hire or fire any of the plaintiffs; (2) controlled the work schedules and performed day-to-day supervisory functions over any of the plaintiffs; or (3) maintained any of the plaintiffs' "employment" records. *See generally* SAC.

For all the foregoing reasons, plaintiffs should file an amended pleading containing allegations sufficient to state a plausible claim – on pain of being denied leave to do so in the future.

## C. The SAC Impermissibly Asserts Claims Based On Time-Barred Events.

Finally, even were the SAC sufficient to state a claim against DIRECTV or MasTec by any of the plaintiffs, the claims of each still fail in part on statute of limitations grounds.

<u>Plaintiff Majeski</u>: His FLSA claims against MasTec are time-barred in their entirety. He asserts work dates "[b]etween approximately 2009 and 2011." SAC ¶ 28. He first advanced claims against MasTec in the SAC, filed October 10, 2014 SAC, meaning the longest recovery period for his FLSA claims is three years from the SAC filing date (*i.e.*, Oct. 10, 2011–Oct. 10, 2014). As the SAC does not assert that Majeski worked after October 10, 2011, his FLSA claims against MasTec are untimely.

ReedSmith

Plaintiff Kerwyn Kirton: His FLSA claims against MasTec are time-barred in part. Kirton claims he worked for Defendants from "March 2010 to October 2013." SAC ¶ 24. He first asserted such claims in the November 1, 2013 OC, meaning the longest period for his FLSA claims against MasTec is three years from the OC file date (*i.e.*, Nov. 1, 2010–Nov. 1, 2013). To the extent that Kirton asserts FLSA claims against MasTec for work between March 2010 and October 31, 2010, those claims are untimely.

Plaintiff Kevin Kerr: FLSA and NY Law claims against both MasTec and DIRECTV are time-barred in part. Kerr alleges work dates "[b]etween approximately 2006 and 2011." SAC ¶ 32. *As against MasTec*: Kerr first asserted claims in the October 10, 2012-filed SAC, making the longest recovery period for his FLSA claims three years from the SAC file date (*i.e.*, Oct. 10, 2011–Oct. 10, 2014). Insofar as Kerr asserts FLSA claims for work from 2006 to October 9, 2011, those claims are untimely. Kerr's NY Law claims against MasTec also are partly time-barred. The recovery period for those claims is six years from the SAC file date (*i.e.*, Oct. 10, 2008–Oct. 10, 2014), such that any NY Law claims for work between 2006 and October 9, 2008 are untimely. *As against DIRECTV*: Kerr first asserted these claims in the November 1, 2013 OC, making the longest recovery period for his FLSA claims three years from the OC file date (*i.e.*, Nov. 1, 2010–Nov. 1, 2013). Any FLSA claims based on events from 2006 to October 31, 2010 are untimely. Kerr's NY Law claims against DIRECTV are also time-barred in part. The period for those claims is six years from the OC file date (*i.e.*, Nov. 1, 2007–Nov. 1, 2013). Any NY Law claims based on work between 2006 and October 31, 2007 are untimely.

Plaintiff Robert Mullings alleges that he worked "[b]etween approximately 2006 and May 2013." SAC ¶ 20. All his claims against MasTec, and his NY Law claims against DIRECTV, are time-barred in part. *As against MasTec*: Mullings first asserted claims in the SAC, filed October 10, 2011. The longest limitations period for his FLSA claims is three years from the SAC file date (*i.e.*, Oct. 10, 2011–Oct. 10, 2014). Insofar as he asserts FLSA claims for work from 2006 to October 9, 2011, those claims are untimely. Mullings' NY Law claims against MasTec are partly time-barred as well. The recovery period for those claims is six years from the SAC file date (*i.e.*, Oct. 10, 2008–Oct. 10, 2014). Any NY Law claims arising from events between 2006 and October 9, 2008 are time-barred. *As against DIRECTV*: Mullings first asserted NY Law claims in the November 1, 2013 OC. The period for these claims is six years from the OC file date (*i.e.*, Nov. 1, 2007–Nov. 1, 2013). Any NY Law claims against DIRECTV for work between 2006 and October 31, 2007 are untimely.

In accord with the foregoing, plaintiffs should amend their pleading to exclude all time-barred claims, as well as cure all the other deficiencies Defendants have detailed herein.

Respectfully submitted,


/s/ *Amanda D. Haverstick*
Amanda D. Haverstick

ReedSmith

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attests that on October 20, 2014 the foregoing letter to the Court was simultaneously served on counsel of record for all parties by means of the ECF filing system.


Dated:  October 20, 2014                    By: <u>/s/ *Amanda D. Haverstick*</u>